**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **TABITHA D. ROBINSON** | ) | |
| | ) | |
| **Petitioner/Defendant,** | ) | |
| | ) | **CIVIL NO. 10-203-GPM** |
| **vs.** | ) | |
| | ) | **CRIMINAL NO. 08-30234-02-GPM** |
| **UNITED STATES of AMERICA,** | ) | |
| | ) | |
| **Respondent/Plaintiff.** | ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court on Petitioner Tabitha Robinson's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Petitioner's motion is based primarily on a claim of ineffective assistance of counsel during plea negotiations. The Government responded to the Petitioner's motion as ordered by this Court. For the reasons set forth below, the Petitioner's motion is denied.

### FACTUAL BACKGROUND

On October 28, 2008, Ms. Robinson was arrested and charged with conspiracy to produce child pornography, in violation of 18 U.S.C. § 2251(a) and (e), and conspiracy to transport minors with the intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a). According to the Factual Stipulation signed by Ms. Robinson, she brought "Jane Doe 3," a minor in her custody, to a hotel in Terre Haute, Indiana in August 2008 to participate in sexual acts with co-defendants, William Milligan and Louise Helen Masulla. "Jane Doe 11," who was in the custody of Ms. Masulla, was also present. During the encounter, Mr. Milligan and Ms. Masulla performed oral sex on both

Jane Doe 3 and Jane Doe 11.  Mr. Milligan attempted vaginal sex with Jane Doe 11.  The defendants took photographs of the encounter, including illicit photos of the two minors, which Ms. Robinson later downloaded on her computer and sent to Ms. Masulla via email.

Ms. Robinson was indicted by a grand jury on the two aforementioned counts on November 4, 2008.  The Court determined Ms. Robinson was indigent and appointed attorney Robert Herman as her representation.

On April 1, 2009, Ms. Robinson entered into a plea agreement with the Government and pleaded guilty.  The plea agreement contained an appellate waiver. Magistrate Judge Donald G. Wilkerson accepted Ms. Robinson's plea of guilty, ruling the pleas to each count were made knowingly and voluntarily.

Ms. Robinson appeared for her sentencing on August 3, 2009.  The United States, represented by Assistant United States Attorney Suzanne Garrison, recommended a sentence of 260 months imprisonment followed by a lifetime term of supervised release. The Court, however, gave Ms. Robinson a life sentence, which was on the high-end of the guideline range.  Ms. Robinson filed a notice of appeal.

On August 26, 2009, the United States moved to dismiss the appeal because Ms. Robinson waived her appellate rights in the plea agreement.  While this issue was pending, Mr. Herman filed a motion to withdraw as Ms. Robinson's appointed counsel, which the Court granted.  The Court appointed Chief Federal Defender Richard H. Parsons as Mr. Herman's replacement.

On January 26, 2010, under the advice of Mr. Parsons, Ms. Robinson voluntarily dismissed her appeal under Federal Rule of Appellate Procedure 42(b).  Ms. Robinson

then filed a timely motion pursuant to 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel.  The Court directed the Government to respond to Ms. Robinson's motion, and the Government filed its response on September 10, 2010.  Ms. Robinson filed a rebuttal to the Government's response on November 8, 2010.

Although the plea agreement between Ms. Robinson and the Government stipulates Ms. Robinson knowingly and voluntarily waived her right to contest her conviction and sentence under Titles 18 and 28, Ms. Robinson now contends her guilty plea was not made knowingly and voluntarily.  Ms. Robinson claims Mr. Herman was ineffective in the following four ways: (1) provided inadequate counsel during plea negotiations; (2) failed to suppress Ms. Robinson's statements to investigators; (3) neglected to conduct a pretrial investigation; and (4) did not pursue a mental defense.

## DISCUSSION

### A.  Evidentiary Hearing

A 28 U.S.C. § 2255 motion does not mandate an evidentiary hearing.  *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996); *see also Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001).  "[A] district court *must* grant an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (emphasis in original) (internal quotations omitted).  However, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" then a hearing is not required. *Id*.  Allegations that are "vague, conclusory, or palpably incredible rather than detailed and specific" do not warrant a hearing.  *Bruce*, 256 F.3d at 597.  Likewise, "mere speculation" does not warrant an evidentiary hearing, as the petitioner "must file a detailed and specific

affidavit showing he has actual proof of allegations he is making." *Miller v. United States*, 183 Fed. Appx. 571, 578 (7th Cir. 2006). For evidentiary hearing consideration, the Seventh Circuit requires a petition made pursuant to 28 U.S.C. § 2255 to "include an affidavit setting forth the specific basis for relief." *Kafo*, 467 F.3d at 1067. An affidavit accompanying the petition is a threshold requirement – "its absence precludes the necessity of a hearing." *Id.* The specific allegations in the petition and accompanying affidavit must go beyond merely unsupported assertions, as "[m]ere unsupported allegations cannot sustain a petitioner's request for a hearing. *Prewitt*, 83 F.3d at 819.

Ms. Robinson's § 2255 motion does not specifically request an evidentiary hearing, nor is such a hearing warranted. Though Ms. Robinson provides an affidavit to meet the threshold requirement for a hearing, she alleges no facts in her petition or supporting affidavit, that if true, would entitle her to § 2255 relief. The Court's careful review of the motion, files, and records leads the Court to conclude an evidentiary hearing is not required in this case. The Court will resolve the motion without a hearing.

## B. Legal Standards

### 1. Collateral Review Under 28 U.S.C. § 2255

Section 2255 requires the court to vacate, set aside, or correct the sentence of a prisoner in custody if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by the law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "Habeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Kafo*, 467 F.3d at 1068, *quoting Prewitt*, 83 F.3d at 816. There are "significant procedural hurdles" to

consideration of a petitioner's habeas claim. *Bousely v. United States*, 523 U.S. 614, 615 (1998).   Collateral relief is appropriate only when the error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997). Habeas relief through a § 2255 motion is not a substitute for direct appeal. *Fountain v. United States*, 211 F.3d 429, 433.  A § 2255 motion:

> can*not* raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (emphasis in original) (*overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)).

The Supreme Court, however, has held "that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).  In fact, "ineffective assistance claims are generally best addressed through a motion in collateral proceeding pursuant to § 2255 because 'the trial record is not developed precisely for the object of litigating or preserving the claim… [and] in many cases will not disclose the facts necessary to decide either prong of the Strickland analysis.'" *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004) (quoting *Massaro*, 538 U.S. at 505).  Thus, the procedural restrictions outlined in *Belford* cannot bar a § 2255 claim based on ineffective assistance of counsel.  Ms. Robinson's reasons for her petition for habeas relief pursuant to § 2255 are couched as ineffective assistance of counsel claims.

### 2.   Ineffective Assistance of Counsel

The heavy burden of showing ineffective assistance of counsel rests squarely on the shoulders of the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The court's review of an attorney's conduct "is 'highly deferential,' with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

When evaluating a § 2255 motion claiming ineffective assistance of counsel, a court will apply the two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 668, 690, 694).  The first prong requires the petitioner to demonstrate that her counsel's performance was deficient. *Strickland*, 466 U.S. at 687.  For a counsel's performance to be considered deficient, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id*.  The second prong of *Strickland* requires the petitioner to show that her counsel's deficient performance prejudiced the defense. *Id*.   The petitioner "must show that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Importantly, a court does not need to analyze both prongs of the test, as a petitioner's failure to satisfy either prong is sufficient to defeat her claim. *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) (citing *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990)).  Furthermore, the petitioner must provide objective evidence in support of her claim. *Strickland*, 466 U.S. at 687–88.

### 3.   Waiver of Appellate and Collateral Attack Rights

Here, the plea agreement contains a waiver of appellate and collateral attack rights.  Such a waiver "will be enforced if: (1) its terms are clear and unambiguous; and (2) the record demonstrates that it was entered into 'knowingly and voluntarily.'" *United States v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001) (citing *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999)).  The United States Court of Appeals for the Seventh Circuit has stated that "a careful plea colloquy under Rule 11 [serves as evidence] that the guilty plea is knowing and voluntary." *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002).  While Federal Rule of Criminal Procedure 11 requires the court to discuss with the defendant aspects of her guilty plea, "the court is not required to conduct a specific dialogue with the defendant concerning the appeal waiver, so long as the record contains sufficient evidence to determine whether the defendant's acceptance of the waiver was knowing and voluntary." *Jones*, 167 F.3d at 1144.  The defendant's statements made during her plea colloquy are generally "accorded a 'presumption of verity.'" *Schuh*, 289 F.3d at 975 (quoting *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000)).

Although a valid appellate waiver may be binding in other respects, it does not preclude judicial review of a claim that the plea agreement itself was the product of ineffective counsel.  *Jones*, 167 F.3d at 1144–45.  If the defendant can demonstrate ineffective assistance of counsel with respect to the negotiation of the waiver, then the waiver is not effective against a § 2255 challenge.  *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000).  "Even an ineffective assistance claim cannot survive a waiver unless the claim relates specifically to the voluntariness of the waiver itself." *Bridgeman v. United States*, 229 F.3d 589, 593 (7th Cir. 2000).  That is, ineffective

assistance claims related to anything other than the plea negotiation – related to counsel's performance at sentencing, for example – are barred by an enforceable waiver. *Id.*; *see also Jones*, 167 F.3d at 1145 ("[W]e reiterate that waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver."); *United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000) (finding that when petitioner surrendered the right to challenge his sentence on any grounds in a *voluntary* plea agreement, he had no viable theory for appeal).

### C.  Ms. Robinson's Motion to Vacate, Set Aside, or Correct Sentence

Ms. Robinson attempts to circumvent restrictions on § 2255 collateral relief, procedural default, and the enforceability of the waiver in her plea agreement by couching her motion in terms of ineffective assistance of counsel during plea negotiations. Upon review, the appellate and collateral attack waiver in Ms. Robinson's plea agreement is enforceable.  However, this otherwise enforceable waiver does not bar Ms. Robinson's claim of ineffective assistance of counsel because it directly relates to the plea negotiations.  Therefore, the Court will analyze this specific claim on the merits.  Ms. Robinson's claim fails under a *Strickland* analysis.  The waiver is enforceable with respect to Ms. Robinson's sentencing, so allegations of ineffective counsel that relate to sentencing are summarily dismissed.

### 1.  Enforceability of Appellate Waiver in Ms. Robinson's Plea Agreement

Section III, paragraph 2 of Ms. Robinson's plea agreement states the following:

The Defendant is aware that Title 18, Title 28 and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence.  Acknowledging all this, and in exchange for the recommendations and concessions made by the United States in this plea agreement, the Defendant

knowingly and voluntarily waives her right to contest any aspect of her conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed in in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), the Defendant reserves the right to appeal the reasonableness of the sentence. The Defendant acknowledges that in the event such an appeal is taken, the Government reserves the right to fully and completely defend the sentence imposed, even if the sentence imposed is more severe than that recommended by the Government. Defendant knowingly and voluntarily waives her right to seek pardon, whether before or after her release from custody.

*United States v. Tabitha Robinson*, S.D. Ill., Criminal Case No. 08-30234-002-GPM (Doc. 64). The terms of this appellate and collateral attack waiver are express, unambiguous, and plainly clear. The agreement also bears Ms. Robinson's signature, cementing her consent to the agreement's provisions.

Moreover, Ms. Robinson's statements given during the April 1, 2009, change of plea hearing clearly illustrate that she knowingly and voluntarily entered into the plea agreement and specifically acknowledged and accepted the appellate waiver terms of the agreement:

> THE COURT: Is that your signature on that document I just gave you?
> MS. ROBINSON: Yes.
> …
> THE COURT: Did anyone force you to sign this?
> MS. ROBINSON: No, sir.
> THE COURT: Make any promises to you for signing it?
> MS. ROBINSON: No.
> THE COURT: You signed it of your own free will?
> MS. ROBINSON: Yes.
> …
> THE COURT: Do you also understand under some circumstances, you or the Government may have the right to appeal any sentence the District Judge may impose, however, you have waived most of your appellate rights. You understand that?
> MS. ROBINSON: Yes, sir.
> …
> THE COURT: Do you understand if the sentence is more severe than you suspected, you will still be bound by your plea and have no right to withdraw it?
> MS. ROBINSON: Yes, sir.

*United States v. Tabitha Robinson*, S.D. Ill., Criminal Case No. 08-30234-002-GPM (Doc. 145). The Court finds that Ms. Robinson's waiver of appellate and collateral attack rights was clear and unambiguous. The Court further finds that Ms. Robinson entered into the plea agreement knowingly and voluntarily.

### 2. Ineffective Assistance of Counsel During Plea Negotiations

Ms. Robinson's otherwise enforceable waiver does not bar her ineffective assistance of counsel claim so long as that claim specifically relates to the negotiation of the waiver. In order to prove ineffective assistance of counsel, Ms. Robinson must successfully show both the objectively deficient performance of her attorney during plea negotiations and an actual prejudice to her defense that would not have occurred but for her attorney's ineffectiveness. Ms. Robinson fails to meet her burden on either *Strickland* prong. Her § 2255 waiver stands. The claims in Ms. Robinson's motion that question her attorney's performance during plea negotiations are insufficiently supported, and many are actually contradicted by the record. Additionally, were the Court to assume, *arguendo*, counsel's performance was deficient, Ms. Robinson does not present proof of any actual resultant prejudice to her defense.

Ms. Robinson's proffers a number of claims relating to Mr. Herman's alleged ineffectiveness during plea agreement negotiations. Ms. Robinson's primary arguments are that Mr. Herman (1) failed to inform her of the elements of the crimes for which she was charged and the Government's burden to prove all the elements beyond a reasonable doubt; (2) failed to calculate the sentencing guidelines correctly; (3) led Ms. Robinson to believe that a life sentence was "off the table"; (4) failed to inform Robinson of her right to withdraw her plea before sentencing; and (5) wrongfully dissuaded her from

proceeding to trial.  Ms. Robinson's statements during her change of plea hearing contradict many of these allegations.  All other allegations, even if proven true, would fail to demonstrate ineffective assistance of counsel under the *Strickland* analysis.

First, Ms. Robinson claims Mr. Herman failed to inform her of the elements of the crimes for which she was charged and the Government's burden to prove all the elements beyond a reasonable doubt.  However, this claim is in stark contrast to both the plea agreement, which bears her signature, and her change of plea hearing, where she was placed under oath.  The plea agreement lists the elements of the relevant offenses (Document 64), and the transcript from the change of plea hearing contains the following:

> THE COURT: Again, you have seen the Indictment, right?
> ROBINSON: Yes.
> THE COURT: You have discussed the charges in the Indictment with Mr. Herman?
> ROBINSON: Yes.
> …
> THE COURT: Those two counts, Miss Robinson, are conspiracy to produce child pornography and conspiracy to transport minors with the intent to engage in criminal sexual activity.  You understand those are the two charges against you?
> ROBINSON: Yes, sir.
> THE COURT: Okay.  Miss Garrison, if you would, would you give the elements and the possible penalties that Miss Robinson faces if she is convicted, if the Court accepts her plea of guilty?
> GARRISON: Yes, Your Honor.  As to Count 1, conspiracy to produce child pornography, there is a mandatory minimum term of imprisonment of 15 years up to a maximum of 30 years imprisonment of 15 years up to a maximum of 30 years imprisonment, fine of up to $250,000, a term of supervised release from five years to life, a $100 special assessment, restitution would be mandatory if there are any qualifying losses.
> As to Count 2, conspiracy to transport minors with intent to engage in criminal sexual activity, a mandatory minimum term of imprisonment of ten years up to life, $250,000 fine, a term of supervised release from five years to life, a special assessment of $100 and also restitution would be mandatory.
> THE COURT: Okay.  Would you give the elements of the offense also?
> GARRISON: Yes, Your Honor.  As to Count 1, conspiracy to produce child pornography, the Government must prove the following beyond a reasonable doubt:  First, that the conspiracy as charged in the Indictment existed, and second,

that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy.

   As to Count 2, conspiracy to transport minors with an intent to engage in criminal sexual activity, the elements are the same.  The Government must prove beyond a reasonable doubt that the conspiracy as charged in Count 2 of the Indictment existed, and second, that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy.

THE COURT: Miss Robinson, did you hear Miss Garrison read the elements that the Government would be required to prove if your case went to trial?

ROBINSON: I did.

*United States v. Tabitha Robinson*, S.D. Ill., Criminal Case No. 08-30234-002-GPM (Doc. 145).  The record provides sufficient evidence that Ms. Robinson was aware of the elements of the offenses for which she was charged, as well as the Government's burden to prove all the elements beyond a reasonable doubt in the event her case went to trial.

   Second, Ms. Robinson contends Mr. Herman failed to calculate the advisory guideline range correctly.  However, as it has been accepted in the Seventh Circuit, "an attorney's 'mere inaccurate prediction of a sentence' does not demonstrate the deficiency component of an ineffective assistance of counsel claim." *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999).  Whether Mr. Herman miscalculated the sentencing guideline range is irrelevant and will not sustain Ms. Robinson's claim of ineffective assistance of counsel in this regard.

   Third, Ms. Robinson claims Mr. Herman led her to believe that entering the plea agreement would ensure that a life sentence was off the table.  The transcript of the change of plea hearing, however, shows that Magistrate Judge Wilkerson and Assistant U.S. Attorney Garrison made it plainly clear to Ms. Robinson that a life sentence was still a very real possibility.  Per the colloquy in Ms. Robinson's change of plea hearing:

   GARRISON: As to Count 2, conspiracy to transport minors with intent to engage in criminal sexual activity, a mandatory minimum term of imprisonment of ten

years up to life, $250,000 fine, a term of supervised release from five years to life, a special assessment of $100 and also restitution would be mandatory.

…

THE COURT: Did you also hear [Ms. Garrison] give you the minimum and maximum possible penalties you face if convicted of these charges?

ROBINSON: Yes, sir.

…

THE COURT: Okay, very good.  Do you understand that any recommendation of sentence agreed to by your lawyer and the U.S. Attorney is not binding upon the Court and that you might, on the basis of your guilty plea, receive a more severe sentence than requested or recommended, and if the Court does not accept the United States Attorney's recommendation, you will not have the right to withdraw your plea and you will be bound by it.  You understand that?

ROBINSON: Yes, sir.

THE COURT: Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges in determining the sentence in a criminal case.  The United States Supreme Court, however, now has made the guidelines advisory rather than mandatory for judges.  Have you and Mr. Herman talked about how the Sentencing Commission Guidelines might apply to your case?

ROBINSON: Yes, sir.

*United States v. Tabitha Robinson*, S.D. Ill., Criminal Case No. 08-30234-002-GPM (Doc. 145).  The record simply does not support Ms. Robinson's claim in this instance.  In fact, the record confirms Ms. Robinson was aware of both the maximum sentence she faced and the Court's ability to deviate from the plea agreement's recommended term of imprisonment.

Fourth, Ms. Robinson argues Mr. Herman failed to advise her of her right to withdraw her plea before sentencing.  As with many of her claims, Ms. Robinson fails to provide any concrete or credible evidence to back this allegation.  If, however, the Court were to assume, *arguendo*, that Mr. Herman neglected to inform Ms. Robinson of this right, it would not result in the prejudice necessary to satisfy the second prong of the *Strickland* analysis.  Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a guilty plea after the court accepts the plea, but prior to

sentencing, if the defendant is able to "show a fair and just reason for requesting the withdrawal." FED. R. CRIM. PRO. 11(d)(2)(B).  "A defendant faces an uphill battle in seeking to withdraw a guilty plea after a thorough plea colloquy." *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008) (citing *United States v. Bennett*, 332 F.3d 1094, 1099 (7th Cir. 2003)).  Nowhere in the record, including her § 2255 motion and rebuttal to the Government's response, does Ms. Robinson articulate a "fair and just" reason for why she would have withdrawn her guilty plea had she been notified of her right to do so. *See United States v. Hodges*, 259 F.3d 655 (7th Cir. 2001) (holding, among other things, that a defendant must provide some credible evidence when attempting to withdraw a plea and that even "naked claims of innocence" are not sufficient reasons for withdrawing a plea prior to sentencing).

Lastly, Ms. Robinson alleges Mr. Herman wrongfully dissuaded her from proceeding to trial and that her only option to avoid a life sentence was to plead guilty. When reviewing an attorney's performance, the Supreme Court has held that it is necessary that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of the counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time."  *Strickland*, 466 U.S. at 694. Because Ms. Robinson faced very serious charges, it was not unreasonable or beyond the "prevailing professional norm," *Id.* at 694, for Mr. Herman to encourage Ms. Robinson to plead guilty.  If Ms. Robinson had not pleaded guilty, she would have lost any possible reduction in sentence for acceptance of responsibility.  Moreover, Ms. Robinson would have gone to trial with two co-defendants who had agreed to testify against her if necessary.  Due to the "difficulties inherent in making the evaluation, a court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.  Therefore, Mr. Herman's recommendation that Ms. Robinson plead guilty as opposed to proceed to trial does not constitute deficient performance under *Strickland*.

### 3.   Failure to File a Motion to Suppress

Ms. Robison additionally argues Mr. Herman was ineffective in that he failed to file a motion to suppress statements Ms. Robinson made to police officers following the events at the Terre Haute hotel.  Ms. Robinson's claims she was questioned under circumstances that led her to believe she was in police custody, but was never read her *Miranda* warnings.  *See Miranda v. Arizona*, 384 U.S. 436 (1996) (requiring law enforcement officials to inform a suspect in custody of her rights, e.g., the right to remain silent); *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007) ("Under *Miranda*, a suspect interrogated by law enforcement officers while in custody must be notified of his constitutional rights to counsel and against self-incrimination").  Statements obtained in violation of *Miranda* are inadmissible or must be removed from the record. *Miranda*, 384 U.S. at 479.  As the Government correctly notes, however, the police report refutes Ms. Robinson's assertion that she was in police custody at the time of questioning. *Tabitha Robinson v. United States*, S.D. Ill., Civil Case No. 10-CV-203-GPM (Doc. 4).  While much can be said about this issue from the perspective of *Miranda v. Arizona*, the focus here is on whether Ms. Robinson's claim holds up under *Strickland*.

Ms. Robinson cannot show that Mr. Herman's failure to file a motion to suppress prejudiced the outcome of the case.  Ms. Robinson's co-defendants, who already pleaded guilty, were willing to cooperate with the Government in its investigation.  Statements,

emails, online chats, and photographs from Ms. Robinson's co-defendants would have been enough to incriminate Ms. Robinson.  Accordingly, the claim that Mr. Herman was ineffective because he failed to file a motion to suppress is defeated under the second prong of the *Strickland* analysis.

### 4.  Failure to Conduct Pretrial Investigation

Ms. Robinson claims that, "Counsel did not execute a pretrial investigation.  If a pretrial investigation had been conducted, information could have been discovered to advise against plea agreement." *Tabitha Robinson v. United States*, S.D. Ill., Civil Case No. 10-CV-203-GPM (Doc. 4).  At no point in Ms. Robinson's motion does she make clear what Mr. Herman would have discovered had he conducted a pretrial investigation involving the officers and the victims.  Only in her rebuttal does Ms. Robinson offer the argument that a pretrial investigation would have uncovered a Department of Child and Family Services report showing that the victims did not suffer any physical, sexual, or emotional abuse. *Tabitha Robinson v. United States*, S.D. Ill., Civil Case No. 10-CV-203-GPM (Doc. 7).  Such information, Ms. Robinson claims, would have been "important in a defense where an individual is being accused of being a pedophile and the issue of recidivism rates are being raised." *Id.*

However, any evidence repudiating Ms. Robinson's status as a pedophile is irrelevant.  The Court made this clear during Ms. Robinson's sentencing:

> To promote respect for the law – I am not going to allow myself to be pulled into a quibble except for a very limited purpose over whether the defendant is a pedophile or not.  She is not charged with, nor did she plead guilty to, being a pedophile.  She pled guilty to conspiring to transport a minor with the intent to engage in sexual activity.  Now that is what she is charged with.

*Tabitha Robinson v. United States*, S.D. Ill., Civil Case No. 10-CV-203-GPM (Doc. 4-5).

The report would not have changed the outcome of Ms. Robinson's case since it does not

speak to the offenses for which Ms. Robinson was charged.

Moreover, Ms. Robinson's claim is further weakened by the fact that she failed to

address the issue at her change of plea hearing in front of Judge Wilkerson.  Once again,

a review of the record completely contradicts Ms. Robinson's claim:

> THE COURT: Okay, very good.  The Court is satisfied with the defendant's competence and will so find at this time she is competent to plead in this matter. Miss Robinson, have you had enough time to discuss your case with Mr. Herman?
> ROBINSON: Yes, sir.
> THE COURT: Are you satisfied with Mr. Herman's representation of you?
> ROBINSON: Yes.
> THE COURT: Has there been anything you wanted Mr. Herman to do for you that he hasn't done?
> ROBINSON: No, sir.

*United States v. Tabitha Robinson*, S.D. Ill., Criminal Case No. 08-30234-002-GPM (Doc.

145).  The claim that Mr. Herman was ineffective because he failed to conduct a pretrial

investigation is unsubstantiated and does not support Ms. Robinson's § 2255 motion.

### 5. Claims of Ineffective Assistance of Counsel Not Directly Related to Plea Negotiation

Ms. Robinson's ineffective assistance of counsel claim fails as it relates to the

plea negotiations; therefore her appellate and collateral attack waiver is enforceable.

Since "only arguments that would nullify the plea itself survive," any claims related to

Ms. Robinson's sentence are waived. *Behrman*, 235 F.3d at 1052.

Along with the multiple claims addressed in this order, Ms. Robinson has

proffered numerous other reasons for why she believes she was denied effective

assistance of counsel.  Among them, Ms. Robinson claims that she did not have adequate

contact with her attorney, that he ignored her questions concerning such things as jury

instruction, and that he gave the Court character letters only "as an afterthought." *Tabitha Robinson v. United States*, S.D. Ill., Civil Case No. 10-CV-203-GPM (Doc. 1).   Ms. Robinson also devotes a significant portion of her rebuttal contesting many of the facts presented in the police report.   However, most of these broad claims are baseless, lack any sort of credible evidence to back them, or simply are inconsequential. *See United States v. Hodges*, 259 F.3d 655 (7th Cir. 2001) ("An ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct").

It is important to note that this conclusion also applies to Ms. Robinson's last major complaint, which is that Mr. Herman failed to pursue a mental defense based on her manic depression.   Although the record is not explicit, Ms. Robinson appears to treat the mental defense claim as a failure on Mr. Herman's part *during* sentencing.   Ms. Robinson states:

> The judge presumed to know what was going on, but in fact many of the facts were missing.  Had the information been available to the judge I am positive he would have been more understanding of the human being I am, all parts being considered, even the part that makes mistakes, through the absence of being able to think clearly.

*Tabitha Robinson v. United States*, S.D. Ill., Civil Case No. 10-CV-203-GPM (Doc. 7). Again, "the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." *Jones* 167 F.3d at 1145.   Because Ms. Robinson's mental defense claim refers to evidence she believes should have be presented during the sentencing, the claim is summarily dismissed due to procedural default.

## <u>CONCLUSION</u>

Ultimately, Ms. Robinson cannot escape what she did.  She willingly associated herself with two predatory individuals, participated in sexual acts with minors, and took photographs, which she later disseminated through email.  These facts are undisputed.  Ms. Robinson has no one but herself to blame for incurring a sentence within the guideline range – least of all her attorney.  Consequently, Ms. Robinson's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED**, and this action is **DISMISSED with prejudice**.  The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: August 6, 2012

<u>/s/ G. Patrick Murphy</u>
G. PATRICK MURPHY
United States District Judge